UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SASHO DUKOVSKI, | ) | Case No. 5:07CV3899 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). ECF Dkt. #1, 16. Plaintiff asserts that the ALJ did not articulate a valid basis for finding his testimony not credible and lacked substantial evidence in which to find that work existed that he could perform in the national economy. ECF Dkt. #16.

For the following reasons, the Court REMANDS this case so that the ALJ, using the proper standards, can reevaluate the discounting of Plaintiff's credibility relating to his mental impairments and their resulting limitations. The Court further REMANDS this case so that the ALJ, using the proper standards, can reevaluate and explain the weight that he gave to the opinions of consulting psychologist Frederick Leidal and Dr. Kadle.

**I.     PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on November 18, 2003 alleging disability beginning April 1, 2002 due to back pain, neck pain, headaches, shoulder pain, depression, anxiety, panic attacks and difficulty concentrating and focusing. Tr. at 82-87, 110. The Social Security Administration (SSA) denied Plaintiff's applications and affirmed the denials upon reconsideration. *Id*. at 25-38. Plaintiff requested a hearing before an ALJ and hearings were held on March 10, 2006 and September 5, 2006. *Id.* at 361, 398. At the hearings, Plaintiff testified and was represented by counsel. *Id.* A medical expert testified at the first hearing and a vocational expert testified at the second hearing. *Id.*

On October 24, 2006, the ALJ denied Plaintiff's applications for DIB and SSI, finding that while he had the severe impairments of cervical neck pain, headaches, depression and anxiety, those impairments, individually or in combination with other impairments, did not meet or equal a listed impairment. Tr. at 16. The ALJ discounted Plaintiff's credibility and gave less weight to the opinions of the consultative examiner in finding that had a residual functional capacity (RFC) to perform medium work with mild restrictions in daily living activities, maintaining social functioning, and in maintaining concentration, persistence and pace. *Id*. He also found that Plaintiff could perform jobs with only limited public contact. *Id.* The ALJ concluded that Plaintiff could perform his past relevant work as a cook or kitchen helper with this RFC. *Id.*

Plaintiff, through his attorney, requested that the Appeals Council review the ALJ's decision. Tr. at 9. The Appeals Council denied the request for review, finding no basis for changing the ALJ's decision. *Id.* at 5-8.

On December 28, 2007, Plaintiff filed a timely complaint with this Court, and Defendant answered. ECF Dkt. #s 1, 12. Both parties have filed briefs addressing the merits of the case and Plaintiff has filed a reply. ECF Dkt. #s 14, 16, 17. At issue is the decision of the ALJ dated October 24, 2006, which stands as the final decision. Tr. at 13-19; 20 C.F.R. § 404.984.

## II.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the following sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**III.    STANDARD OF REVIEW**

Under the SSA, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).   Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Id.*; *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 532 ($^{6th}$ Cir. 1997).  Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

The Sixth Circuit has held that "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . .This is because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Therefore, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Moreover, this Court can remand a case under sentence four of 42 U.S.C. § 405(g), sentence six of 42 U.S.C. § 405(g), or under both of these sections. Sentence four provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a

rehearing." 42 U.S.C. § 405(g). A sentence-four remand provides relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further factfinding is necessary. *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994), citing *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26 (1990). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986), citing *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551 (6th Cir. 1984).

An ALJ's decision may be reversed and benefits immediately awarded only if the record adequately establishes a plaintiff's entitlement to benefits. *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). The decision to deny benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *See Faucher*, 17 F.3d 171, 176 (6th Cir. 1994). Where further factual issues remain, the case should be remanded for further factfinding. *See id.*

## IV. ANALYSIS

### A. CREDIBILITY

Plaintiff asserts that the ALJ erred in finding that his testimony was not credible. ECF Dkt. #14 at 10. Defendant addresses this assertion by separating the ALJ's credibility analysis into that addressing Plaintiff's physical pain and that addressing his mental impairments. The Court notes that Plaintiff does not clearly challenge the ALJ's assessment of his credibility relating to his physical impairments because he fails to discuss any of the evidence pertaining to his physical restrictions beyond the ALJ's finding that Plaintiff missed some physical therapy appointments. However, even if Plaintiff had addressed this issue, the Court finds that the ALJ's credibility determination regarding this physical impairment is supported by substantial evidence.

The Sixth Circuit recently discussed the two-step process for evaluating complaints of disabling pain under the social security regulations in *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). In order for pain or other subjective complaints to be considered disabling, the ALJ must first ask whether an underlying medically determinable physical impairment exists that could reasonably be expected to produce the claimant's symptoms. *Id.*, citing 20 C.F.R. § 416.929(a). Second, if the ALJ finds the existence of such an impairment, he must then "evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* Relevant factors that the ALJ should consider in evaluating the symptoms of a claimant include his

> daily living activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Rogers*, 486 F.3d at 247, citing 20 C.F.R. § 416.929(a), Social Security Ruling 96-7p and 1996 WL 374186, at *2-3 (July 2, 1996)(Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements).

Further, since the ALJ has the opportunity to observe the claimant in person, great deference is given to the ALJ's conclusion about the claimant's credibility. *McCoy o/b/o McCoy v. Comm'r of Soc. Sec.,* 81 F.3d 44, 47 (6th Cir. 1995). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *Gooch*, 833 F.2d 589, 592 (6th Cir. 1987). Nevertheless, substantial evidence must support an ALJ's assessment of a claimant's credibility. *Id.* If the ALJ rejects or discounts the claimant's complaints

as not credible, he must clearly state his reasons for doing so.  *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).  Blanket assertions that a claimant is not credible are insufficient, as well as explanations that are not consistent with the entire record and the weight of the relevant evidence. *Rogers*, 486 F.3d at 247.  SSR 96-7p requires that the ALJ make his explanation regarding credibility "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*

Here, the ALJ did cite 20 C.F.R. § 404.1529, 20 C.F.R. § 416.929 and SSR 96-7p in his decision and stated that he had considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. Tr. at 16.  He then cited Plaintiff's testimony relating to his physical pain and his depression, anxiety and panic attacks.  *Id.* at 16-18.

As to discounting Plaintiff's testimony regarding the limitations resulting from his cervical impairment, the ALJ noted that Plaintiff had missed appointments for physical therapy.  Tr. at 17. Defendant presumes from Plaintiff's brief that he challenges the ALJ's reliance upon these missed appointments in discounting his credibility as unlawful based upon *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1999)("Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's asessment of claimant's condition is inaccurate.")  and *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").  ECF Dkt. #16 at 15 and fn. 11, citing ECF Dkt. #14 at 12.  Defendant notes that the ALJ cited numerous instances of Plaintiff's failure to attend appointments with his physical medicine and rehabilitation specialist, counseling sessions and mental

-7-

health specialists. *Id.* at fn. 11.  Defendant also notes that the missed appointments were not the only evidence that the ALJ relied upon in discounting Plaintiff's credibility.

Substantial evidence supports the ALJ's decision to discount Plaintiff's testimony regarding the disabling pain and resulting limitations from his cervical impairment regardless of whether *Nguyen* or *Blankenship* apply in instances such as this where a social security claimant misses appointments for the treatment of physical impairments and has a mental impairment.  Here, as pointed out by Defendant, the ALJ also cited the objective medical evidence that did not support the degree of Plaintiff's reported symptoms.  He noted that a February 10, 2003 consultative examiner found that Plaintiff had normal ranges of motion, including a cervical range of motion, and the examiner concluded that Plaintiff would only have a mild impairment in his work-related activities.  *Id*.  The ALJ also noted that cervical spine x-rays taken on February 10, 2003 were also normal.  *Id.*  He also cited to a July 12, 2005 cervical MRI which showed only mild disc space narrowing at C7-T1 and T1-2 and mild central disc herniation/protrusion at C5-6 without significant cord compression, canal stenosis or foraminal narrowing.  *Id.*  The ALJ also identified Plaintiff's medications and their side effects, as well as the therapies and other measures that Plaintiff used in order to alleviate his pain.  *Id*. at 16-17.  Additionally, he considered the statements of Plaintiff's mother and sister.  *Id*. at 17-18.

Based upon his review and articulation of the appropriate criteria, the ALJ reasonably determined that Plaintiff's statements concerning the intensity, persistence and limiting of the effects of his symptoms from his neck impairment were not entirely credible.  Accordingly, the Court finds that substantial evidence supports the ALJ's credibility determination as to Plaintiff's neck impairment and its limitations.

While substantial evidence supports the ALJ's credibility determination with regard to Plaintiff's neck impairment, such evidence does not support the ALJ's credibility determination as to the limitations of Plaintiff's mental impairment. In finding Plaintiff's testimony as to the limitations of his mental impairments not credible, the ALJ found the following:

> The claimant is not credible as he had not proceeded with his treatment plan in a diligent fashion and has missed several appointments, both for treatment of his neck pain and for his mental health treatment. The undersigned notes that the claimant stated he has problems with transportation to appointments but finds this an insufficient excuse for the large number of appointments that have been documented in the record as being missed. It is inconsistent to state that one has a disabling impairment yet fail to seek treatment for it. While the undersign[sic] could appreciate someone missing one or two appointments, however to consistently miss professional appointments make it extremely difficult to know the full extent of the impairments if there are[sic] not objective evidence in the records of the impact of the treatment over a period of time. Said another way, was claimant's impairments improving, staying the same or decreasing as a result of the treatment by his treating sources? Who knows that answer when required appointments are routinely missed by the claimant. Exhibits 15F/2; 18F/4; 20F/2; [sic]

Tr. at 18. The ALJ also indicated that he had considered the written statements of Plaintiff's mother and his sister, whom he believed were sincere in their statements regarding the severity of Plaintiff's impairments and restrictions. *Id*. However, the ALJ noted that these relatives of Plaintiff were "naturally not objective observers" and they were lay witnesses and not medical professionals. *Id.* The ALJ also noted that neither relative acknowledged that Plaintiff had missed numerous appointments with medical providers over an extended period of time. *Id*. In addition, the ALJ indicated that recent treatment notes showed that Plaintiff had no thought or perception disorder, no suicidal or homicidal ideation, and no side effects from his medication except for sexual side effects from Paxil. *Id.* He also cited the notes of an evaluating psychologist who indicated on December 11, 2002 that Plaintiff had an exaggerated profile on the Minnesota Multiphasic Personality Inventory-2 (MMPI) testing which suggested a possibility of malingering or partial malingering. *Id*. The ALJ

also referred to and gave little weight to the opinion of a consultative examiner who had opined that Plaintiff would have a moderate to marked impairment in coping with normal work stress and completing a normal workweek. *Id*. The ALJ indicated that this psychologist had noted that Plaintiff had an odd, evasive and confused presentation on examination. *Id.*

Plaintiff asserts that the ALJ failed to articulate a valid basis with the reasons that he gave for finding his testimony not credible. Plaintiff relies upon *Nguyen*, 100 F.3d at 1465 and *Blankenship,* 874 F.2d at 1124 and argues that the ALJ erred in relying upon his failure to seek or continue treatment for his mental impairments as the main basis for discounting his credibility relating to the limitations resulting from his mental impairments. ECF Dkt. #14 at 12. The undersigned agrees.

As quoted above, the ALJ's main emphasis in discounting Plaintiff's credibility relating to limitations from his mental impairments was Plaintiff's failure to attend treatment. *Id.* at 17-18. He discussed missed appointments and failure to follow a diligent pattern of treatment in his direct discounting of Plaintiff's credibility, the discounting of letters from Plaintiff's mother and sister, and in setting forth Plaintiff's treatment history. *Id.* at 17.

Even if this were not his main finding in discounting Plaintiff's credibility, the other evidence upon which the ALJ relies does not constitute substantial evidence. In addition to the letters from Plaintiff's sister and mother, the ALJ cited to the notes of consulting psychologist Frederick Leidal who had evaluated Plaintiff on December 11, 2002 and found that he had an exaggerated profile on MMPI testing which suggested a possibility of malingering or partial malingering. Tr. at 18, citing to Tr. at 229. However, Mr. Ledial also noted that the MMPI profile suggested psychological distress, dissatisfaction with life, moodiness, anxiety, irrational thinking, and possibly bizarre mentation. *Id*. Mr. Leidal further concluded, despite the possibility of malingering report, that Plaintiff's ability to work was moderately to markedly impaired due to the complicated picture presented by Plaintiff

-10-

regarding his cognitive problems and his reported anxiety and depression. *Id*. at 231. Mr. Leidal also found that Plaintiff's ability to adapt to the work environment and to tolerate the stressors of work and complete a normal workday would be moderately to markedly impaired. *Id*. at 231-232. The ALJ failed to discuss why he gave less weight to these parts of Mr. Leidal's report but attributed more weight to the possibility of malingering that Mr. Leidal cited from the MMPI results.

Further, the ALJ failed to reconcile the malingering possibility statement by Mr. Leidal with Dr. Kadle's amended statement to her February 11, 2003 psychiatric review technique assessment. Dr. Kadle, an agency reviewing psychologist, had cited the review of Mr. Leidal's MMPI profile which suggested a possibility of malingering in her February 2003 assessment. Tr. at 251. Yet three months later, she amended her comments to the assessment by stating that "Clt presents with a somewhat unusual profile at CE. There is some possibility of malingering, although it is also likely that clt may have been anxious and/or emotionally distressed at the CE." *Id*. at 260. The ALJ failed to address this finding, which tends to support the part of the MMPI profile reported by Mr. Leidal which suggested psychological distress, anxiety, irrational thinking and possibly bizarre mentation.

Because the ALJ erroneously relied upon Plaintiff's missed appointments as the primary reason to discount his credibility based upon mental limitations, and substantial evidence does not otherwise support the credibility finding, the Court REMANDS this case for further articulation based upon the proper standards. The Court also REMANDS this case for the ALJ to explain his reliance upon only some parts of Mr. Leidal's consultative examination report while disregarding others and to explain why he relied upon those portions which may be contrary to those presented by another mental health professional.

**B.** **STEP FOUR FINDING**

Plaintiff also challenges the ALJ's step four finding that he could return to his past relevant work. ECF Dkt. #14 at 13-15. Plaintiff contends that the ALJ relied upon a hypothetical individual that did not accurately portray his limitations when he presented the hypothetical individual to the vocational expert and made his step four finding. *Id*.

The Court will not address this assertion because it is related to the erroneous credibility determination found by this Court. The ALJ had posed a hypothetical person to the vocational expert in which he was to assume a person with Plaintiff's age and education with a medium work exertional level and a mental RFC of mild restrictions in performing daily living activities, social functioning, and concentration, persistence and pace. Tr. at 421. The ALJ also indicated that the hypothetical person could perform jobs that require only limited public contact. *Id.* The vocational expert testified that such a person could perform Plaintiff's past relevant work as a cook or kitchen helper. *Id*. The ALJ thereafter presented a more restricted second hypothetical individual and Plaintiff's counsel subsequently presented other more restricted individuals, all of which the vocational expert found would not be able to perform any past relevant work or other jobs that would be available in the national economy. *Id*. at 421-425.

A vocational expert's testimony in response to a hypothetical question can constitute substantial evidence if the hypothetical presented accurately portrays a social security claimant's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987). An ALJ need pose hypothetical questions to the vocational expert that incorporate only those limitations that he accepts as credible. *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ considered the medical evidence, the medical opinions and Plaintiff's subjective complaints in determining his RFC for Plaintiff. Since the Court is remanding

this case so that the ALJ can employ the correct standard in assessing Plaintiff's credibility, and further explain the weight given to the medical opinions regarding Plaintiff's mental impairments and their impact, the Court cannot address the step four issue which relates to the RFC and hypothetical questions to the vocational expert which are based upon limitations which the ALJ finds credible.

### V.     CONCLUSION

Upon a review of the record, the ALJ's decision and the law and analysis provided above, the Court reverses and remands the instant case for the ALJ to employ the proper standard, reevaluate and better articulate his reasons for discounting Plaintiff's credibility relating to his mental impairments and their resulting limitations. The Court further reverses and remands this case so that the ALJ can reevaluate and explain why he attributed more weight to certain parts of Mr. Leidal's evaluation and less weight to other evaluations and to explain any discrepancies that may exist between the evidence he relied upon and any evidence to the contrary from other mental health professionals.


Dated: March 3, 2009                                           */s/George J. Limbert*
                                                                GEORGE J. LIMBERT
                                                                U.S. MAGISTRATE JUDGE